IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SHIRLEY PATRICIA LEE, )
)
                Plaintiff, )
)
   vs. )
)
CAROLYN W. COLVIN, acting )
Commissioner, Social Security )
Administration, )
) No. 1:14-cv-0011-HRH
                Defendant. )
_____)

## O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff has timely filed her opening brief,[1] to which defendant has responded.[2] Oral argument was not requested and is not deemed necessary.

### Procedural Background

Plaintiff is Shirley Patricia Lee. Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

---

[1] Docket No. 18.

[2] Docket No. 19.

In January 2011, plaintiff filed applications for disability benefits under Titles II and XVI of the Social Security Act. Plaintiff alleged that she became disabled on September 15, 2007. Plaintiff alleged that she is disabled because of post traumatic stress disorder (PTSD), fetal alcohol syndrome, hypertension, hyperlipidemia, anxiety, and depression. Plaintiff's applications were denied initially and upon reconsideration. After a hearing on October 15, 2012, an administrative law judge (ALJ) denied plaintiff's claims. On May 20, 2014, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's January 14, 2013 decision the final decision of the Commissioner. On July 17, 2014, plaintiff commenced this action in which she asks the court to find that she is entitled to benefits.

General Background

Plaintiff was born on August 17, 1959. She was 53 years old at the time of the October 2012 hearing. Plaintiff has a ninth grade education. Plaintiff's past relevant work includes work as a janitor, a road construction flagger, a homecare provider, and a construction laborer.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through June 30, 2011."[3]

---

[3] Admin. Rec. at 26.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since September 15, 2007, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: cognitive disorder, anxiety disorder, depressive disorder, and degenerative joint disease

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 26.

of the left knee."[6] The ALJ found that plaintiff had "the following non-severe impairments: polysubstance abuse in sustained full remission, hyperlipidemia, and hypertension."[7]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[8] The ALJ considered Listings 1.02A (major dysfunction of a joint), 12.02 (organic mental disorder), 12.04 (effective disorders), and 12.06 (anxiety disorders).[9] The ALJ considered the paragraph "B" criteria and found that plaintiff had a mild restriction of activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and no episodes of decompensation.[10]

Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform medium work, which is defined as lifting and/or carrying up to fifty pounds total and twenty-five pounds frequently and standing and/or

---

[6]Admin. Rec. at 26.

[7]Admin. Rec. at 27.

[8]Admin. Rec. at 27.

[9]Admin. Rec. at 27-28.

[10]Admin. Rec. at 28.

> walking up to six hours in an eight hour work day with normal breaks. In addition, the claimant is limited to occasional climbing of ladders, ropes, or scaffolds and only occasional kneeling. She must also avoid concentrated exposure to extreme cold, unprotected heights, and hazardous machinery. Finally, the claimant is limited to one to two step tasks involving only simple work-related decisions with few, if any workplace changes. She is also limited to work involving only superficial interaction with the general public.[11]

The ALJ found that plaintiff had no limitations flowing from her depression and anxiety because plaintiff's "symptoms associated with these impairments have improved over time through counseling and medication."[12]

The ALJ gave some weight[13] to Dr. Bursell's opinion.[14] The ALJ also gave some weight[15] to the opinions of Dr. Morgan.[16] The ALJ gave significant weight to a portion of

---

[11] Admin. Rec. at 29 (citation omitted).

[12] Admin. Rec. at 30.

[13] Admin. Rec. at 31.

[14] On March 26, 2004, John P. Bursell, M.D., examined plaintiff and opined that she could stand/walk for 6-8 hours, sit for 6-8 hours, lift up to 10 pounds continuously, lift 11-20 pounds frequently, lift 21-60 pounds occasionally, use her hands and feet for repetitive motions, frequently bend and crawl, frequently lift above shoulder level. and could not use her right hand for firm grasping or fine manipulation. Admin. Rec. at 529.

[15] Admin. Rec. at 31.

[16] Charles P. Morgan, Ph.D., did psychological assessments of plaintiff on December 4, 2002 and August 26, 2004. The relevant portions of Dr. Morgan's assessments are discussed below.

Dr. Sugai's opinion and little weight to another portion of her opinion.[17] The ALJ gave significant weight[18] to Dr. Pervier's[19] opinion. The ALJ gave little weight to Moira

---

[17]Admin. Rec. at 31. Carmen Sugai, M.D., was part of the Fetal Alcohol Spectrum Disorder (FASD) evaluation team and examined plaintiff on July 20, 2011. The opinion the ALJ is referring to here is discussed in detail below.

[18]Admin. Rec. at 31.

[19]On November 29, 2011, Dr. Kenneth Pervier, a neurologist, examined plaintiff and opined that
> [t]here is nothing on physical examination that would indicate any physical reason the patient could not find employment other than her cognitive disabilities. This unfortunately[] would limit her employment to entry level work at most. She most likely could learn repetitive simple tasks but would find great difficulty interacting with people at the front counter or at a cash register, where she would have to make significant amounts of decisions, calculations, change money and inter-act[] with customers. She would also be quite limited even answering phones and making appointments and taking messages....
>
> She does not show any signs of having problems with sitting, standing, moving about, lifting, carrying, carrying objects, speaking, seeing or traveling.
>
> ...I would doubt that this patient is having any significant changes medically that could affect her cognition, but the continued daily use of marijuana might dull her cognitive abilities significantly especially if she was continuing to do this during the neurocognitive testing done in the summer of this year. Continued use of the substance, THC, could easily have dulled her performance several degrees.... I believe the patient will continue to have problems with any form of attempt to find a job other than entry level work, or possibly simple work

(continued...)

McBride's occupational therapy evaluation[20] as well as to the opinion of plaintiff's mental

---

[19](...continued)
>like being an assistant in a nursing home helping the old people and the nursing staff.

Admin. Rec. at 525-526.

[20]Admin. Rec. at 31. McBride was part of the FASD evaluation team and evaluated plaintiff on July 26, 2011. McBride made the following recommendations:

> Shirley has skills necessary to be able to work in select settings successfully. She expressed a desire to do a self employment food cart that she could control where and how long to work. This speaks to her awareness of needing breaks and having had previous difficulty with employers and losing jobs. Self employment may be feasible with additional external supports. No evaluation of her competence for money was done and this should be done if she is expected to manage her own money, purchase supplies, make change and understand cost/profit ratio. If she can manage money sufficient to be self employed than it is reasonable to see her have a self catering cart selling food of some sort. If she is not able to handle money then supported standard style employment that has flexibility built into it would be best suited to her. She can multi task but needs breaks and would be able to handle customers and their questions but not for extended conversations. She has adequate motor planning and knowledge of most task components so with a job coach or trainer she should be successful with a supported job situation.
>
> Overall, Shirley will need to develop those skills that allow her to work around deficit areas since they will likely not change at this stage of her life. If she is given enough support she would be able to work either for herself or others. Focus should be on finding what would give her a living wage within a part time job and slowly allow her to increase her time to at

(continued...)

health counselor, Debra Terry.[21] The ALJ considered plaintiff's GAF scores, but gave these scores little weight.[22] And, the ALJ gave little weight[23] to the lay opinion of Kimber Lee Brown, plaintiff's cousin.[24]

---

[20](...continued)
>  the most 3/4 time which will give her rest and reduce the demands required for the jobs. Her deficits should be considered permanent and eligibility for disability services should be considered for her…. Shirley should be considered disabled for purposes of work and will likely only be successful in employment if it is supported and flexible as well as less than full time.

Admin. Rec. at 280-281.

[21]Admin. Rec. at 32. On February 15, 2011, Terry reported that plaintiff had no problems with personal care, cooks one good meal daily, does household chores but is limited due to pain, spends 30 minutes to one hour a day doing chores, goes grocery shopping once a week for 10 minutes, has difficulties handling money due to spelling and math difficulties, visits her ill friend, has dinner with her boyfriend and his son, has problems maintaining social relationships, and has become more secluded in the past few years. Admin. Rec. at 232-236. Terry reported that plaintiff has "pain when lifting, squatting, bending, standing, reaching, walking, kneeling & climbing stairs. [Plaintiff] cannot remember tasks. She has problems [with] concentration and understanding." Admin. Rec. at 236. Terry reported that plaintiff could walk 1/4 mile, has problems with her attention span, is easily frustrated when trying to follow written instructions, gets confused easily when trying to follow spoken instructions, does not get along with authority figures very well because she does not understand what they want her to do, and gets very frustrated when she is stressed or has changes in her routine. Admin. Rec. at 237-238.

[22]Admin. Rec. at 32.

[23]Admin. Rec. at 32.

[24]Brown completed a third-party function report on March 8, 2011. Admin. Rec. at 259-266.

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a janitor."[25] This finding was based on the testimony of the vocational expert.[26]

The ALJ also made alternative step five findings. The ALJ found that "there are other jobs that exist in significant numbers in the national economy that [plaintiff] also can perform", including working as a laundry worker and a kitchen helper.[27] These findings were based on the testimony of the vocational expert.[28]

Thus, the ALJ found that plaintiff had "not been under a disability, as defined in the Social Security Act, from September 15, 2007, through the date of this decision...."[29]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial

---

[25] Admin. Rec. at 32.

[26] Admin. Rec. at 33. Patricia Ayerz testified as the vocational expert at the hearing. Admin. Rec. at 60-65.

[27] Admin. Rec. at 33.

[28] Admin. Rec. at 33-34.

[29] Admin. Rec. at 34.

-9-

evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred as to Dr. Sugai's opinion. Dr. Sugai was part of the FASD evaluation team, which also included Dr. Boardman and Moira McBride. The FASD team opined that

> a. Shirley is more likely to succeed in jobs where she can learn the sequence of steps which are done repeatedly. She also requires more time to accomplish a given task - so this has to be a consideration at the work place.
> b. She would also benefit from opportunity to take regular breaks so that "sensory-motor fatigue" is prevented. The breaks would also provide a chance for her to release built-up tension and reduce the sense of being overwhelmed.

    c. With her poor verbal memory, written instructions would be more helpful to her.[30]

The ALJ treated this opinion as though it were Dr. Sugai's opinion and gave significant weight to the portion of the opinion in which the FASD team opined that plaintiff "would be more likely to succeed in jobs where she can learn the sequence of steps which are done repeatedly."[31] But, the ALJ gave little weight to the portion of the FASD team's opinion in which they opined that plaintiff "would benefit from additional time as well as written instructions."[32]

  An ALJ may rely upon selected portions of a medical opinion while rejecting others, as long as he gives specific and legitimate reasons for declining to adopt a portion of the opinion. Magallanes v. Bowen, 881 F.2d 747, 753, 755 (9th Cir. 1989). The ALJ rejected the FASD team's opinion that plaintiff would need additional time in which to do tasks and that she would benefit from written directions because "it is inconsistent with the claimant's ability to be engaged throughout testing and her ability to follow directions well."[33] Specifically, the ALJ pointed out that in August 2004, Dr. Morgan noted that

---

[30]Admin. Rec. at 506.

[31]Admin. Rec. at 31.

[32]Admin. Rec. at 31.

[33]Admin. Rec. at 31.

plaintiff "followed directions quite well"[34] and in September 2011, Tina Woods[35] noted that plaintiff "was engaged throughout the testing."[36]

This portion of the FASD team's opinion was not inconsistent with the rest of the medical evidence. As plaintiff points out, in 2002, Dr. Morgan also indicated that plaintiff had difficulties with following directions. In his summary, he stated that "[s]he failed to attend to directions" and his recommendations included the following: 1) "Be certain the client understands directions by asking her to repeat them in her words" and 2) "Encourage client to review work, return to original directions and ask herself whether her response conforms to directions[.]"[37] The ALJ relied on Dr. Morgan's opinion as a basis for rejecting the portion of the FASD team's opinion about written directions, but Dr. Morgan's opinion was internally inconsistent. He opined both that plaintiff followed directions well and that she did not follow directions well and his recommendations at least suggest that plaintiff would benefit from written directions.

---

[34]Admin. Rec. at 454.

[35]On September 7, 2011, on referral from Dr. Sugai, Tina Woods did a psychological evaluation to assess plaintiff's "general cognitive intellectual functioning...." Admin. Rec. at 509.

[36]Admin. Rec. at 510.

[37]Admin. Rec. at 470.

As for the ALJ's rejection of the FASD team's opinion that plaintiff would need additional time to complete tasks, this opinion also was not inconsistent with the other medical evidence of record. Dr. Morgan noted that plaintiff worked slowly on some tasks and that she "exhibit[ed] signs of an organic brain syndrome affecting ... speed of information processing symbolic material and encoding visual and verbal information."[38] And although Woods did indicate that plaintiff was engaged throughout the testing, Woods also recommended that plaintiff would do "better at jobs which do not require 'speed or time based' tasks."[39]

The reason the ALJ gave for rejecting a portion of the FASD team's opinion was not legitimate. This error was not harmless because it means that the ALJ's RFC was incomplete, which in turn means that the ALJ's step four finding was unsupported. See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (quoting Flores v. Shalala, 49 F.3d 562, 570–71 (9th Cir. 1995)) ("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record").

Plaintiff next argues that the ALJ erred by not including any limitations flowing from her depression and anxiety in her RFC. The ALJ did not include any limitations

---

[38] Admin. Rec. at 454, 457-458 & 470.

[39] Admin. Rec. at 513.

flowing from plaintiff's depression and anxiety in plaintiff's RFC because the ALJ found that plaintiff's "symptoms associated with these impairments have improved over time through counseling and medication."[40] Plaintiff argues that this was error because the Ninth Circuit has observed "[t]hat a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." Holohan, 246 F.3d at 1205. Plaintiff argues that although the ALJ noted that she sees her counselor once a week and that it is through this counseling that she has improved, the ALJ failed to include "off task time" into her RFC so that she could have time each week to tend to her mental illness. What plaintiff seems to be arguing is that the ALJ should have included in her RFC a limitation that plaintiff would need to be absent 1-2 hours a week for her counseling session.

The ALJ did not err by not including any limitations flowing from plaintiff's anxiety and depression. The record does indicate that plaintiff benefitted from counseling but plaintiff would not necessarily have to be absent from work in order to continue her weekly counseling sessions.

Finally, plaintiff argues that the ALJ erred in finding her symptom statements less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's

---

[40]Admin. Rec. at 30.

testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen, 80 F.3d at 1282). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the

claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" Id. at 1112-13 (internal citations omitted). "Even where those activities suggest some difficulty [in] functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113.

The ALJ stated that he found plaintiff's symptom statements to be less than credible, but plaintiff argues that the ALJ did not give any reasons for why he was discounting her symptom statements. Defendant argues, however, that the ALJ gave legally sufficient reasons for finding plaintiff's symptom statements less than credible.

First, defendant contends that the ALJ found plaintiff's statements less than credible because they were not supported by the objective medical evidence. Defendant then cites to the ALJ's discussion of Dr. Pervier's opinion that plaintiff would "be limited to entry level positions where she could learn simple, repetitive tasks and she would have only

limited contact with the general public."⁴¹ The problem with this argument is that when the ALJ was discussing Dr. Pervier's opinion, he was not doing so in the context of plaintiff's credibility. So, it is not clear that the ALJ was basing his credibility finding on the lack of objective medical evidence.

Second, defendant contends that the ALJ found plaintiff's statements less than credible because her symptoms associated with depression and anxiety improved with counseling and medication. While the effectiveness of medication or treatment is a factor to consider when determining credibility, the ALJ's discussion about plaintiff's depression and anxiety was not tied to her credibility. Again, it is not clear that the ALJ was basing his credibility finding on the fact that plaintiff's anxiety and depression had improved with treatment.

Defendant also contends that the ALJ found plaintiff's statements less than credible based on her activities of daily living. The ALJ did discuss plaintiff's activities of daily living at step two, when he was considering the paragraph "B" criteria. But, there is nothing in the ALJ's decision that ties this discussion to the ALJ's credibility finding. Again, it is not at all clear that the ALJ's credibility finding was based on plaintiff's activities of daily living.

---

⁴¹Admin. Rec. at 31.

Because the ALJ erred in rejecting a portion of the FASD team's opinion and as to plaintiff's credibility, the court must consider whether to remand this matter for an award of benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

> More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id.

Here, further development of the record is needed. There is no evidence currently in the record as to what impact the limitations found by the FASD team would have on plaintiff's ability to work. The ALJ asked the vocational expert about work with a production rate or pace work, but he did not ask the vocational expert about a person simply needing additional time to do tasks nor did he ask about a need for written

instructions.[42]  As for plaintiff's credibility, the ALJ should be given an opportunity to explain why he found plaintiff's symptom statements less than credible.

## Conclusion

The ALJ's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 7th day of May, 2015.

/s/ H. Russel Holland  
United States District Judge

---

[42]Admin. Rec. at 63-64.